IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


LULA AUGUSTA BRUNS                                          PLAINTIFF

            v.                    Civil No. 10-2181

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                             DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

        Plaintiff, Lula Bruns, brings this action under 42 U.S.C. § 405(g), seeking judicial review

of a decision of the Commissioner of Social Security Administration (Commissioner) denying

her claims for a period of disability and disability insurance benefits ("DIB") under Title II of

the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In

this judicial review, the court must determine whether there is substantial evidence in the

administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.      Procedural Background:

        The plaintiff filed her application for DIB on March 22, 2007, alleging an onset date of

January 1, 1999, due to depression, diabetes, extreme psoriasis, back pain, carpal tunnel

syndrome ("CTS"), obesity, neuropathy, and arthritis. Tr. 46, 50, 88-94, 134, 143, 144-145, 174-

175.  Plaintiff's applications were denied initially and on reconsideration.  Tr. 41-42, 46, 53-55,

59-60.  She then requested an administrative hearing, which was held on April 13, 2009.  Tr. 16-

40.  Plaintiff was present and represented by counsel.  It was determined that Plaintiff's date last

insured ("DLI") was March 31, 2005.

At the time of the administrative hearing, plaintiff was 49 years of age and possessed a high school education with a college degree in business.[1]  Tr. 19, 21-22.  She had past relevant work ("PRW") experience as an in-home daycare owner/operator, data processing clerk, and receptionist.  Tr. 116-123, 135-136, 154-160, 194.

On June 10, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's degenerative disk disease and mood disorder did not meet or equal any Appendix 1 listing.  Tr. 48-49.  He found that plaintiff maintained the residual functional capacity ("RFC") to perform a range of sedentary work, except that she could occasionally lift 20 pounds, sit for 6 hours, and stand or walk for 6 hours.  Mentally speaking, the ALJ noted moderate restrictions in social functioning and maintaining concentration, persistence, and pace. Further, he found her to be moderately limited in understanding, remembering, and carrying out detailed instructions; responding appropriately to usual work situations and routine work changes; and, appropriately interacting with supervisors, co-workers, and the public.  Tr. 49-51. Plaintiff could perform work where the interpersonal contact was incidental to the work performed; the complexity of the tasks was performed by rote with few variables; and, the tasks required little judgment with simple, direct, and concrete supervision.  With the assistance of a vocational expert, he then determined Plaintiff could still perform work as a poultry worker, inspector, and sorter.  Tr. 51-52.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 8, 2010.  Tr. 1-4.  Subsequently, plaintiff filed this action.  ECF No. 1.  This

---

[1]At the hearing, Plaintiff reported having a two year degree.  However, when evaluated by Dr. Spray, she stated that she had a Bachelor's degree in Business.  Tr. 334.

case is before the undersigned for report and recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 7, 8.

## II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3),

3

1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.      The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)-(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.    Evidence Presented:

We note that the present case is a DIB case.  In order to qualify for DIB, a claimant must show that he or she became disabled during the period in which he or she met the DIB requirements.  *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001).  A claimant who becomes disabled after the expiration of her insured status is not entitled to DIB.  *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998).  Thus, the period of review is from January 1, 1999, the alleged onset date, through March 31, 2005, Plaintiff's last insured date.

Records indicate Plaintiff had been treated for depression by Dr. Rebecca Floyd since at least 1996. Tr. 261-266. Plaintiff also had a history of lower back pain.  Prior to the relevant

time period, Plaintiff had undergone a lumbar laminectomy.  An MRI of her lumbar spine conducted in May 1996 revealed postoperative changes posterolaterally on the left at the L5-S1 level with a small amount of epidural scarring, degenerative disk space narrowing and dorsal spondylitic spurring at the L5-S1 level along with mild diffuse disk bulging, moderate right neural foraminal stenosis at the L5-S1 level due to spondylitic spurring and disk protrusion, degenerative disk space narrowing at the L2-3 level, and mild disk bulging at the L4-5 level particularly posterolaterally on the right.  Tr. 302-303.  Dr. Luis Cesar diagnosed her with coccygodynia and prescribed a doughnut type support for sitting.  Tr. 306.

On July 7, 1999, Plaintiff sought treatment from Dr. G. Luke Lewis, a dermatologist, for psoriasis.  Tr. 369.  She had reportedly received her last injection of Kenalog in February, and had previously treated her condition with topical steroids.  Psoriasis was noted on her abdomen, left knee, elbows, right chest, right hand, and left arm.  Dovonex and Cormax were prescribed. Tr. 369.

On September 13, 1999, Plaintiff returned to Dr. Floyd's office with complaints of insomnia and depression.  Tr. 259.  Family members had apparently recommended that she see the doctor.  The previous year had been difficult for her, but Plaintiff felt she had coped with it well.  Her symptoms included, difficulty sleeping, nervousness, depression, memory loss, and emotional liability.  Dr. Floyd increased her dosage of Effexor.  Tr. 259.

On September 21, 1999, Plaintiff's psoriasis had improved, but remained problematic. Tr. 368.  It continued to cover her abdomen, legs, and hands.  Tr. 368.

On October 19, 1999, Plaintiff reported doing well on her increased dosage of Effexor. Tr. 258.

AO72A
(Rev. 8/82)

On May 19, 2000, Plaintiff stated that she had not used any psoriasis medication since November because it was not helping.  Tr. 368.  However, the psoriasis had shown some improvement since she had begun tanning in February.  Dr. Lewis prescribed Lidex, Embrel, and Tazorac.  Tr. 368.

On June 13, 2000, Plaintiff was still doing well on her Effexor dosage.  Tr. 257.  She noted no difficulty with insomnia, emotional lability, or anhedonia.  Her affect was somewhat flat, but her thoughts were logical and goal directed, and her conversation was fluent.  Dr. Floyd diagnosed her with depression, surgical postmenopausal syndrome, and bronchitis.  She refilled her Effexor and Estrace and also prescribed Flonase nasal spray.  Samples of Vantin (an antibiotic) were also provided.  Tr. 257.

On November 10, 2000, Plaintiff again reported that the Effexor was doing well for her.  Tr. 256.  Dr. Floyd noted her history of lumbar laminectomy with continued occasional back pain.  Her pain seemed to be associated with changes in the weather.  Dr. Floyd prescribed Ibuprofen and Darvocet, as well as refilled her Estrace and Effexor.  Tr. 256.

On June 29, 2001, Plaintiff indicated that she was doing well on Effexor and was generally pleased with her progress.  Tr. 255.  Dr. Floyd noted that Plaintiff was also suffering from a bad cold with mild shortness of breath, coughing, and mild body aches.  She diagnosed her with depression and an upper respiratory infection.  Dr. Floyd prescribed Effexor, Allegra-D, and an antibiotic.  Samples of Effexor were also given to Plaintiff.  Tr. 255.

On December 18, 2001, Plaintiff had a follow-up concerning her depression and postmenopausal syndrome.  Tr. 254.  Due to finances, she had been cutting her Effexor dose in

AO72A
(Rev. 8/82)

half.  Dr. Floyd explained that she needed to take the medication as prescribed and refilled her prescriptions.  Tr. 254.

On May 28, 2002, Plaintiff reported pain in her left lower abdominal quadrant and upper leg.  Tr. 254, 310-314.  Over the previous weekend, she reported experiencing fever up to 103 degrees with chills and generalized malaise.  Plaintiff had been taking Ibuprofen around the clock to help control both the pain and fever.  However, the pain had become quite severe.  An examination revealed tenderness where the abdomen overlapped the groin with marked tenderness to palpation, but no rebound.  Accordingly, she was admitted and placed on IV antibiotics.  A CT scan of the abdomen revealed fatty infiltration of the liver with no apparent disease process elsewhere in the abdomen and increased density in the left lateral abdominal wall subcutaneous fat.  Tr. 293.  A clinical correlation was recommended to differentiate between a hematoma and inflammation.  Tr. 293.  A CT scan of her pelvis revealed a nodular soft tissue density in the subcutaneous fat in the left anterior pelvic wall near the inguinal region and a fold of adipose tissue.  Tr. 295.  Given her history of pain, elevated white cell count, and fever, an abscess was strongly suggested.  Tr. 295.  Her final diagnosis was a soft tissue abscess.  Tr. 312. She underwent subsequent incision and drainage of the abscess, and her pain then improved. Plaintiff was discharged on June 3, 2002, in stable condition.  The doctor continued her on antibiotics and directed to perform wound care.  Tr. 312.

On November 14, 2002, Plaintiff complained of right-sided rib pain.  Tr. 253.  She had recently had the flu with a bad cough.  Although the pain had improved, she continued to have pain with deep breaths and when lying on her side.  She tried taking Tylenol, but it did not help. A chest exam showed tenderness in the lower rib area on the right side over the midline and mid-

7

axillary area.  A mini mental status exam revealed a little bit of nervousness, but was otherwise within normal limits.  Dr. Frisbie diagnosed Plaintiff with pleurisy and depression.  She gave her samples of Celebrex and refilled her Estrace and Effexor.  Tr. 253.

On February 27, 2003, Plaintiff was admitted to the hospital with cellulitis to the abdomen.  Tr. 213-217, 251-252, 307-309.  She also suffered from psoriasis to the abdomen, face, and neck and adult-onset diabetes mellitus.  At the time of admission, she had a large, inflamed psoriatic lesion on her abdomen with inflammation throughout the rest of the abdominal skin that was warm to the touch.  Plaintiff was treated via IV antibiotics, steroids, and topical ointment.  She was also noted to have markedly elevated blood sugar.  Tr. 280.  Plaintiff was prescribed a no-sugar, low carbohydrate diet.  On March 3, 2003, she was discharged home in stable condition.  Tr. 213-217, 307-309.

On March 7, 2003, Plaintiff's cellulitis had responded well to treatment.  Tr. 250.  Dr. Floyd noted that she had been diagnosed with diabetes while in the hospital.  Plaintiff was given a handout regarding diabetes and her diet was reviewed.  At this time, she was also noted to have a psoriatic rash/lesions.  Tr. 250.  Her HgA1C, average blood glucose level, was significantly elevated at 9.0.  Tr. 279.

On June 6, 2003, Plaintiff's fasting blood sugar level was 116, which was noted to be very well.  Tr. 249.  She was encouraged to lose weight and given samples of Glucophage.  Tr. 249.  At this time, her HgA1C level was 5.4.  Tr. 280.

On September 8, 2003, Plaintiff's Glucophage dosage was increased.  Tr. 248.  Her HgA1C level was just barely elevated at 6.1.  A level of less that 6.0 is considered to be normal.  Tr. 277.

8

On April 5, 2004, Plaintiff was diagnosed with diabetes with weight gain. Tr. 246. The record does mention her blood sugar levels, but the copy provided to this Court is illegible. Tr. 246. Test results indicate that her HgA1C level was again elevated at 7.5. Accordingly, Dr. Floyd increased her Glucophage dosage. Tr. 275.

On July 15, 2004, Plaintiff presented in Dr. Stephanie Frisbie's office with complaints of unsteadiness, vertigo, dizziness, and nausea. Tr. 245. She had been taking Estrace, Effexor, and Glucophage, and her blood sugar levels had been running fairly normal for her (100-150). A physical examination was within normal limits and her neurologic exam was normal, except for a small nystagmus. Dr. Frisbie diagnosed her with viral syndrome and labyrinthitis. She prescribed Meclizine and Phenergan. Tr. 245.

On August 9, 2004, Plaintiff was treated for possible diverticulitis. Tr. 244. Dr. Floyd explained that Plaintiff needed a colonoscopy, but Plaintiff refused. Accordingly, Plaintiff was prescribed Keflex. Tr. 244. Lab results revealed an elevated HgA1C level of 7.3. Tr. 274. Accordingly, her Glucophage dosage was again increased. Tr. 274.

On December 10, 2004, records from Dr. Floyd indicate that Plaintiff's diabetes and depression were both stable. Tr. 243. However, her HgA1C level remained slightly elevated at 6.4. Tr. 273.

On January 12, 2005, Plaintiff returned to Dr. Frisbie's office with complaints of left lower quadrant abdominal pain. Tr. 242. The left lower abdominal quadrant was tender, as was the mid-left upper quadrant. Dr. Frisbie diagnosed Plaintiff with left lower quadrant abdominal pain and possible diverticulitis. She prescribed Kelflex and Metamucil and ordered a colonoscopy. Tr. 242.

9

On January 25, 2005, Plaintiff was referred to Dr. Soren Kraemer regarding her complaints of left lower abdominal pain. Tr. 304-305. Plaintiff had been taking Metamucil, but missed a few doses and had then experienced another episode of pain. She was again placed on antibiotics and Metamucil and reported feeling better. An examination revealed some psoriasis on her abdomen and extremities. Dr. Kraemer diagnosed her with episodic diverticulitis and encouraged her to stay on a psyllium supplement. He also advised her to undergo a colonoscopy. Plaintiff agreed, but there is no evidence to indicate that she ever did so. Tr. 304-305.

On March 18, 2005, Dr. Floyd's notes indicate that she had psoriasis, but the remainder of the note is illegible. Tr. 241. At this time, her HgA1C remained elevated at 7.7. Tr. 272.

## IV.    Discussion:

Plaintiff contends that the ALJ erred in his credibility findings, did not properly address her obesity, failed to fully and fairly develop the record with regard to her mental and alleged wrist impairments, improperly determined she could perform sedentary work, and failed to include many of Plaintiff's impairments in the hypothetical question posed to the vocational expert. We will begin with an evaluation of the ALJ's credibility findings.

### A.    Subjective Complaints:

When evaluating the credibility of plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing her reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective

10

complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting her determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

The record does make clear Plaintiff was suffering from residual back pain, psoriasis, diabetes, and depression/anxiety. It does not, however, establish that any of these impairments, whether considered singularly or in combination, were disabling.

### 1.     **Back pain and psoriasis:**

Plaintiff failed to seek consistent treatment for her back pain and psoriasis. *See Hepp v. Asture*, 511 F.3d 798, 807 (8th Cir. 2008)(holding that ALJ may discount disability claimant's

11

subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Dr. Floyd noted that her back pain was merely occasional, and we can find no evidence of an ongoing prescription for pain medication. *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). Further, Plaintiff admitted that, in spite of her impairments, she babysat two small children daily. Clearly, this is inconsistent with her allegations of disabling pain and discomfort.

Records also indicate that she failed to use as directed the medications prescribed to treat her psoriasis.[2] *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility."). And, aside from one abscess, which responded well to treatment, we can find no evidence of complications arising from her psoriasis. In fact, during the relevant time period, it does not appear that her condition resulted in any work-related limitations as her dermatologist made no mention of any restrictions. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job).

## 2. **Diabetes:**

As for her diabetes, Plaintiff was diagnosed with adult onset diabetes during the relevant time period and prescribed oral medication. While it does appear that she experienced some difficulty getting this under control, we can find no evidence to show that this condition actually limited her ability to perform work-related activities. In fact, she continued to work during the

---

[2] Although we are cognizant of Plaintiff's testimony concerning the severity of her psoriasis, we can find no evidence to indicate that her condition was this severe during the relevant time period.

relevant time period and was not hospitalized for her condition after her initial diagnosis and treatment.

### 3.    **Depression and anxiety:**

Plaintiff has also alleged disability due to depression and anxiety. However, we can find no evidence that Plaintiff ever sought out formal mental health treatment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). In fact, she admitted to only receiving treatment for this alleged condition through her primary care physician, who prescribed Effexor. And, treatment notes dated during the relevant time period indicate self reports that the medication was effective. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

While we note that mental status exams were conducted in 2007, these exams were conducted outside the relevant time period. And, although they are somewhat inconsistent with the ALJ's RFC assessment, there is no indication in the record that these assessments relate back to Plaintiff's condition during the relevant time period. As previously mentioned, Plaintiff's own self reports indicate that the Effexor was effective in treating her condition during the relevant time period.

### 4.    **Obesity:**

Although Plaintiff contends that the ALJ did not consider her obesity, the record does not contain the kind of evidence that would support a finding of severe obesity, because Plaintiff's

AO72A
(Rev. 8/82)

physical examinations were essentially normal. *See Bowen v. Yuckert,* 482 U.S. 137, 153 (1987) (O'Connor, J., concurring) (holding that an impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities); 20 C.F.R. § 404.1521(a). And, there is simply no medical evidence to indicate that Plaintiff sought treatment for complications related to her obesity. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). She has also failed to allege any additional limitations specifically related to her obesity. Further, none of her physicians prescribed any exertional or non-exertional limitations associated with her obesity. Tr. 211-218, 221-225, 245-259. *See Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (finding no evidence obesity imposed any limitations). Accordingly, we can not say that the ALJ failed to consider or erred in his treatment of Plaintiff's obesity.

Perhaps the most damaging evidence of record, however, is the fact that Plaintiff continued to work after her alleged onset date and through her date last insured. From January 1, 1999, until November 1, 2007, Plaintiff babysat a nine month old and a fifteen month old in her home approximately fifty hours per week. Tr. 102, 112. She also taught them early learning skills. Tr. 112. Working in spite of impairments is at least some evidence to indicate that the impairments are not disabling. *See Banks v. Massanari*, 258 F.3d 820, 825 (8th Cir. 2001). And, even as here, where the work the claimant is performing may not rise to the level of substantial gainful activity, it does provide evidence that she is able to perform some work. *See* 20 C.F.R. § 404.1571. Clearly, had her condition been as severe as alleged, we believe Plaintiff would not have been able to perform this work.

14

Plaintiff's reported activities also undermine her claim for disability. On April 29, 2007, Plaintiff completed an adult function report. Tr. 146-153. On this, she reported the ability to care for her personal hygiene, prepare simple meals, do laundry, dust, clean, drive a car, ride in a car, go out alone, shop in stores, pay bills, count change, handle a savings account, use a checkbook/money orders, read, listen to music, watch television, talk to friends via telephone, and attend church weekly. Tr. 146-153. Plaintiff also lived alone and sometimes sat with her ailing father so her mother could run errands. Tr. 336. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, these activities do not support plaintiff's claim of disability.

We are cognizant of the testimony of Daisy Bruns, Plaintiff's mother. We have held that an ALJ is not required to accept a statement from a witness who will benefit financially from a determination of disability, although the record in such cases generally includes some indication that the ALJ rejected the evidence for that reason. *Buckner v. Apfel,* 213 F.3d 1006, 1013 (8th Cir. 2000). We nevertheless see no error here.

**B.      Failure to Develop the Record:**

Plaintiff argues that the ALJ did not consider all of Plaintiff's subjective complaints and

15

medical diagnosis, did not send her to a neurologist to determine the extent of her wrist condition, or inquire how long she suffered from depression, anxiety, and social phobia.  The ALJ does have a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). In determining whether an ALJ has fully and fairly developed the record the proper inquiry is whether the record contained sufficient evidence for him to make an informed decision. *See Payton v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994); *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).  Absent unfairness or prejudice, reversal for failure to develop the record is not warranted.  *See Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995).

After reviewing the evidence, we can find no reason for the ALJ to have requested additional medical evidence. The evidence indicates that Plaintiff's depression was responsive to medication.  Further, there are no treatment notes documenting wrist pain or limitations dated during the relevant time period.  In fact, Plaintiff did not seek out an independent evaluation of alleged wrist pain, nor did she request that the ALJ order a neurological evaluation. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (it is also relevant that claimant's attorney did not obtain a consultative examination).  The only evidence concerning her wrist is dated 1993, when she was treated for mild tendinitis in the right wrist.  Tr. 370.  An EMG and nerve conduction studies were ordered, but never conducted.  Accordingly, we can not say that this condition was disabling.

**C.    Combination of Impairments:**

Plaintiff also contends that the ALJ failed to consider her impairments in combination. However, the ALJ's statement that he considered a combination of the impairments is sufficient

16

to show that he considered such. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (ALJ stated that "claimant has a history of coronary artery disease, hernia repair, and chronic obstructive pulmonary disease, but that he has not had an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4).

### D.   Residual Functional Capacity:

We next turn to the ALJ's determination that plaintiff had the RFC to perform a range of sedentary work with moderate mental limitations.   RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393  F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ carefully reviewed the medical records, plaintiff's subjective complaints, plaintiff's testimony regarding her daily activities, and the functional limitations set forth by the physicians. On August 9, 2007, Dr. Bill Payne completed an RFC assessment of

17

Plaintiff.  Tr. 325-332.  After reviewing Plaintiff's medical records, he determined that she could perform a full range of light work.  Tr. 325-332.

On November 7, 2007, Dr. Kay Cogbill completed a psychiatric review technique form and a mental RFC assessment.  Tr. 340-359.  After reviewing her medical records, she concluded Plaintiff suffered from depression, anxiety, and a social phobia resulting in moderate restriction in activities of daily living; understanding, remembering, and carrying out very simple and detailed instructions; remembering location and work-like procedures; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted by them; making simple work-related decisions; maintaining socially appropriate behavior; adhering to basic standards of neatness and cleanliness; being aware of normal hazards and taking appropriate precautions; and, traveling in unfamiliar places or using public transportation.  Dr. Cogbill also noted marked difficulties in completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in the work setting; setting realistic goals; and making plans independently of others.  She then indicated that less than unskilled work was appropriate for Plaintiff.  Tr. 340-359.

18

After thoroughly reviewing the evidence of record, we find substantial evidence to support the ALJ's RFC assessment. Giving Plaintiff the benefit of the doubt, we find that sedentary work was probably a more realistic assessment of her abilities, that was Dr. Payne's assessment of light work. Further, the fact that Plaintiff continued to care for two small children evidences her ability to lift and carry up to 20 pounds occasionally and to sit, stand, and walk for approximately six hours per day.

We note that Dr. Cogbill had the benefit of the mental evaluations conducted outside the relevant time period when preparing her RFC assessment. The relevant medical evidence clearly indicates that Plaintiff's depression and anxiety were controlled via medication. As such, we agree with the ALJ's determination that Plaintiff's symptoms were only moderate. Accordingly, the RFC assessment will stand.

### E.    Vocational expert testimony:

We also find that substantial evidence supports the ALJ's finding that plaintiff can perform work that exists in significant numbers in the national economy. The vocational expert testified that a person with Plaintiff's RFC could perform work as a poultry worker, inspector, and sorter. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

Plaintiff contends that the VE's testimony is flawed because the hypothetical question posed to him did not include many of her severe impairments. However, the ALJ's hypothetical question need only include those impairments that the ALJ finds to be supported by substantial evidence in the record as a whole. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quotation and citation omitted). Here, the ALJ's hypothetical question included all of the

19

limitations found to exist by the ALJ and set forth in the ALJ's description of Plaintiff's RFC.

Accordingly, we find that the vocational expert's testimony constituted substantial evidence

supporting the Commissioner's denial of benefits. *See id.*

**V.     Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting

the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be

affirmed, and plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days**

**from receipt of our report and recommendation in which to file written objections pursuant**

**to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right**

**to appeal questions of fact.  The parties are reminded that objections must be both timely and**

**specific to trigger de novo review by the district court.**

DATED this 22nd day of September 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE